**AUSTIN INDEPENDENT SCHOOL DIS-
TRICT et al., Petitioners,**

v.

**SIERRA CLUB et al., Respondents.**

No. B–3856.

Supreme Court of Texas.

May 9, 1973.

J. M. Patterson, Jr., McGinnis, Lochridge & Kilgore, James W. Wilson, Frank W. Elliott, Jr., Don R. Butler, City Atty., Austin, for petitioners.

Robert C. Means and Paul W. Jones, Jr., Austin, for respondents.

WALKER, Justice.

On the controlling question presented by this appeal, we hold that the suit is an ineffectual collateral attack on the judgment of the County Court at Law No. 2 of Travis County in an eminent domain proceeding.

The suit was filed in the 126th District Court of Travis County by Sierra Club, a nonprofit corporation with a special interest in preserving park land, and several individuals who are qualified voters and taxpaying property owners in the City of Austin. These plaintiffs in the trial court are now our respondents. The legal theories urged by them and the relief sought will be noticed later. Petitioners here, who were defendants in the trial court, are the Austin Independent School District and the members of its Board of Trustees, the City of Austin, its City Manager, Mayor and the other members of the City Council. After a trial to the court without a jury, the district court rendered judgment that plaintiffs take nothing. This judgment was reversed by the Court of Civil Appeals, which rendered judgment granting part of the relief sought by plaintiffs. 489 S.W.2d 325. We reverse the judgment of the Court of Civil Appeals and affirm that of the trial court.

By deed dated December 29, 1931, confirmed by another instrument dated July 21, 1932, A. J. Zilker conveyed 324.1 acres of land to the Board of Trustees of the Public Free Schools of the City of Austin. The conveyance was made pursuant to acceptance by the Board of Trustees and by the voters of the City of Austin of a proposal by Zilker to convey the land to the Board if the City would thereafter purchase the same for park purposes and pay the Board $200,000.00 therefor, part in cash and the remainder in fifteen equal annual installments. By deed dated August 1, 1932, the Board conveyed the 324.1 acres to the City for the agreed consideration, which has been paid.

The land conveyed to the City lies on both sides of the Colorado River, and the portion south of the river, consisting of 280.5 acres known as Zilker Park, is not involved in this suit. We are concerned with a tract of 32.26 acres, which is part of the 43.51 acres lying north of the river. The property north of the river is also park land. On June 25, 1971, the City and the District entered into a contract granting the latter an option to purchase the 32.26 acres as a school site for an agreed price of $749,250.00 and the further consideration of the performance by the District of certain obligations set out in the contract. An easement 50 feet in width along the south line of the land was reserved by the City for a public "hike and bike" trail and "greenbelt." The District agreed to construct "substantial, permanent recreational facilities satisfactory" to the City on the land retained by the latter and adjoining the school site on the east. It also agreed to maintain such recreational facilities, easement and adjacent grounds for a period of 25 years, with the City having the exclusive right at all times to use the facilities on its own property and

the exclusive right during the summer months to use recreational facilities on the school site. Under the terms of the contract, the District was authorized to institute eminent domain proceedings to acquire the property. There were also stipulations that, for purposes of an eminent domain proceeding, the value of the property was $749,250.00 and its paramount public use was as a school site.

An eminent domain proceeding styled Austin Independent School District v. City of Austin, No. 880, in the County Court at Law No. 2 of Travis County, was instituted by the District to condemn the school site. On November 4, 1971, a public hearing was held by the Board in compliance with Art. 5421q, Vernon's Ann.Tex.Civ.St., and the Board then determined that there was no feasible or prudent alternative to the use or taking of the land in controversy for the purposes set out in the statement for condemnation and that the program or project for which it was to be taken included all reasonable planning to minimize the harm to the land and its locale.[1] The eminent domain proceeding later proceeded to trial, and on November 18, 1971, judgment was rendered vesting title to the 32.-26 acres in the District. The record of that proceeding was not introduced in the present case, but the condemnation judgment recites the introduction of evidence that the land "may have been dedicated to use as park land," and that the Board had conducted the hearing and made the determination required by Art. 5421q. There is also a recital that the Council had found as a fact that the land "would be a better public use as a school site than as park land and that the paramount public use was as a school site." The condemnation judgment further recites a finding by the court that the City had consented to the taking and that the paramount public use of the land is for the purposes stated in the condemnation petition.

The judgment of the County Court at Law was not appealed and became final. The present suit, which is an entirely separate proceeding in a different court, was instituted on March 21, 1972. Plaintiffs base their case, in part, on Art. 1019, V.A.T.S., which provides that no park shall be sold until the question of the sale has been submitted to a vote of the qualified voters of the city or town and approved by a majority of the votes cast at the election. They also rely on the charter of the City of Austin, which prohibits the Council from selling or otherwise alienating land dedicated for park purposes unless authorized by the qualified voters at a general or special election. Their third basic contention is that under the provisions of V.T.C.A., Education Code § 23.31, the District has no power to condemn public land.

According to the allegations of the plaintiffs' petition in the trial court: (1) the contract between the City and the District is void because the sale was not authorized by the voters as required by Art. 1019 and the charter; (2) the eminent domain proceeding was a collusive attempt by the District and the City to circumvent the requirements of Art. 1019 and the charter; (3) the County Court at Law could not and should not have entertained the petition in condemnation because the District has no power to condemn public land; and (4) the City and the District were about to make changes in the school site and the adjacent property that would destroy or seriously impair their usefulness as park land. Plaintiffs prayed: (a) for a judgment declaring the contract void; (b) that the judgment of the County Court at Law be set aside and declared void; (c) for a temporary injunction; and (d) for general relief. Defendants answered with general denials.

Apparently no effort was made to obtain a temporary injunction. On April 7, 1972,

---

1. The parties to the present case stipulated that all requirements of Art. 5421q, V.A.T.S., were duly and lawfully met and fulfilled.

the parties submitted all issues of law and fact to the court "on the merits of this cause on a hearing on permanent injunction." As we understand the record, plaintiffs at that time abandoned their contention that the eminent domain proceeding was a collusive attempt to circumvent the statute and the charter. There were a number of stipulations, but no evidence was introduced and we do not have a statement of facts. Plaintiffs had previously moved that the case be decided on the pleadings, and it was submitted to the court on their contentions: (1) that the District has no power to condemn park land; and (2) that even if it has that power, Art. 1019 is a limitation on the exercise of the power. The trial court concluded that the District has the power to condemn park land and that its exercise is not affected by either Art. 1019 or the charter. Judgment was accordingly rendered for respondents. The Court of Civil Appeals held to the contrary on both of these questions.

■ The present suit is necessarily an attack on the judgment of the County Court at Law, which purports to vest title in the District. A declaratory judgment deciding the two questions mentioned above and granting no other relief will avail plaintiffs nothing. The District could still assert its rights under the eminent domain judgment and would be free to proceed with its building program. Plaintiffs wish to preserve the land as a park, and to accomplish this purpose they must destroy, in legal effect, the judgment of the County Court at Law by obtaining a judgment either declaring it void or enjoining the District from exercising rights of ownership.

■ Our county courts, and in this instance the County Court at Law, are courts of general jurisdiction in eminent domain matters. Plaintiffs' attack on the condemnation judgment is governed, therefore, by established rules applicable to attacks on judgments rendered by courts of general

jurisdiction. See Art. 1970–324a, V.A.T. S.; Brunson v. State, Tex., 418 S.W.2d 504; Hopkins v. Cravey, 85 Tex. 189, 19 S.W. 1067; 6 Nichols, Law of Eminent Domain, 3rd ed. 1972, § 26.72.

■ The question then arises as to whether the attack is direct or collateral. See Hodges, Collateral Attacks on Judgments, 41 Texas L.Rev. 163, 499; Templeton v. Ferguson, 89 Tex. 47, 33 S.W. 329; Crawford v. McDonald, 88 Tex. 626, 33 S. W. 325; Clayton v. Hurt, 88 Tex. 595, 32 S.W. 876. A direct attack is a proceeding instituted for the purpose of correcting the earlier judgment. It may be brought in the court rendering the judgment or in another court that is authorized to review the judgment on appeal or by writ of error. The purpose of a direct attack is to change the former judgment and secure the entry of a correct judgment in lieu of the earlier incorrect one. This relief may be obtained on the basis of any error that probably caused the rendition of an improper judgment.

It is clear that the present suit is a collateral attack, and plaintiffs make no serious contention to the contrary. The suit was brought in a different court that has no power to review the judgment of the County Court at Law in an eminent domain proceeding, and its purpose is not to set aside the former judgment and secure the entry of a new and correct judgment in the eminent domain proceeding. And yet, as pointed out above, plaintiffs seek to obtain from the district court a judgment depriving the District of rights it apparently is entitled to enjoy under the judgment of the County Court at Law.

■ The judgment of a court of general jurisdiction is not subject to collateral attack except on the ground that it had no jurisdiction of the person of a party or his property, no jurisdiction of the subject matter, no jurisdiction to enter the particular judgment, or no capacity to act as a court. Plaintiffs recognize these general

rules. They say that the judgment of the County Court at Law is void because: (1) there was no statutory authority for the District to condemn public land; and (2) the Council had no power to make stipulations affecting the District's power to take the land when the transfer had not been approved by the voters as required by Art. 1019 and the charter. We do not agree.

■■ Plaintiffs are contending that the judgment is void because of lack of jurisdiction to enter the particular judgment. There are cases in which collateral attacks have been sustained on this theory, but only where the error is quite serious and strikes at the very power of the court to render the judgment. By the express terms of Sec. 23.31, V.T.C.A., Education Code, the District is vested with "power by the exercise of the right of eminent domain to acquire the fee simple title to real property." This authorizes the District to condemn land and to invoke the eminent domain jurisdiction of the County Court at Law, but the statute does not expressly empower the District to condemn property already devoted to a public use. In these circumstances and when the condemnation will practically destroy the use to which the property has been devoted, the power will not ordinarily be implied from a general power conferred by statute. The power will be implied, however, where the necessity is so great as to make the new enterprise of paramount importance to the public and it cannot be practically accomplished in any other way. Sabine & E. T. R. Co. v. Gulf & I Ry. Co. of Tex., 92 Tex. 162, 46 S.W. 784. It is clear then that the question of the District's right to condemn the school site under the facts and circumstances of the case does not go to the jurisdiction of the County Court at Law but was a matter to be resolved by that court in the exercise of its jurisdiction. See also Missouri-Kansas-Texas R. Co. of Tex. v. Jones, Tex.Com.App., 24 S. W.2d 366. If the court incorrectly determined that question, this was merely an error occurring during the trial and does not render the judgment void. See Clayton v. Hurt, 88 Tex. 595, 32 S.W. 876. Cf. Benat v. Dallas County, Tex.Civ.App., 266 S.W. 539 (wr. ref.). See also Norwood v. Gonzales County, 59 Tex. 218, 14 S.W. 1057.

Art. 1019 and the charter limitations on the powers of the Council do not affect the jurisdiction of the County Court at Law. Even if we assume that the Council had no authority to stipulate value and paramount use for purposes of the condemnation proceeding,[2] the condemnation judgment is not rendered void by the fact that it is based, in part, on an unauthorized stipulation.

■ Although plaintiffs argue to the contrary, defendants did not waive their collateral attack arguments by failing to plead the same in the trial court. These contentions do not constitute an affirmative defense within the meaning of Rule 94, Texas Rules of Civil Procedure.

The judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed.

POPE, J., not sitting.

2. A rather doubtful assumption in view of the opinions, briefs, and applications for writs of error in Kingsville Independent School District v. Crenshaw, Tex.Civ. App., 164 S.W.2d 49 (wr. ref. w. m.), 252 S.W.2d 1022 (wr. ref.). See also City of Tyler v. Smith County, 151 Tex. 80, 246 S.W.2d 601.